564 So.2d 751 (1990)
Richard GRIDER, Appellant,
v.
ADMINISTRATOR, DEPARTMENT OF EMPLOYMENT SECURITY and Moon Tree Services, Appellees.
No. 21553-CA.
Court of Appeal of Louisiana, Second Circuit.
June 20, 1990.
*752 Northwest La. Legal Services by Ana S. Kazan, Shreveport, for appellant.
Office of Employment Sec. by James A. McGraw, Denise A. Nagel, Frank T. Scott, Jr., Ollivette E. Mencer, V. Broussard Guillory, J. Jerome Burden, Baton Rouge, for appellees.
Before FRED W. JONES, Jr., NORRIS and HIGHTOWER, JJ.
NORRIS, Judge.
In this unemployment compensation case, the claimant, Richard Grider, appeals the district court's judgment affirming the denial of his claim for benefits. He argues that the trial court erred in not finding that he left his job for good cause connected with his employment. Grider further contends, in essence, that the prior-claim requirement of LSA-R.S. 23:1601(1) violates the Due Process Clause and the Equal Protection Clause of the U.S. and Louisiana Constitutions. For the following reasons, we find merit in Grider's constitutional argument and reverse the district court's judgment affirming the denial of benefits. We also remand the case with instructions to determine whether Grider requalified for benefits.

FACTS
Grider was hired by Moon Tree Services in Shreveport, Louisiana as a tree climber. He worked from February 1987 to September 1987, averaging about 40 hours a week at $6.75 an hour plus overtime. On September 14, 1987, he notified his employer that he was leaving his job to accept another job with better pay and hours of work. Because he started the second job immediately, he filed no claim for benefits. At his second job, he stated he earned about $399.80 a week. He was later laid off on *753 October 29, 1987 for non-disqualifying reasons.
On November 8, 1987, Grider filed a claim for unemployment compensation with the Caddo Parish Agency. The agency denied his claim. He appealed to the Administrative Law Judge, who affirmed the decision of the agency. The judge held that Grider's action in leaving Moon Tree Services to accept other employment for increased pay was not good cause connected with the employment; thus Grider was disqualified and had not requalified for benefits. Grider then appealed to the Board of Review. The Board affirmed. Pursuant to LSA-R.S. 23:1634, Grider sought judicial review with the district court, naming the Agency and Moon Tree Services as defendants. The judgment of the Board was affirmed.
Grider took the instant appeal, which the Agency initially opposed. However, while the case was pending, the Louisiana Supreme Court decided Pierre v. Adm'r, La. Off. of Emp. Sec., 553 So.2d 442 (La.1989), discussed infra; at oral argument the Agency conceded that Pierre mandated reversal of the judgment.

GOOD CAUSE ARGUMENT
Because we are compelled to consider all non-constitutional arguments before passing upon the constitutionality of an act of the legislature, we will first discuss whether Grider left his first job under disqualifying circumstances. See Alexander v. Louisiana, 405 U.S. 625, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972); State v. Stripling, 354 So.2d 1297 (La.1978).
A claimant is disqualified from receiving unemployment benefits if he has left his employment without good cause connected with his employment. R.S. 23:1601(1). Personal reasons for resigning are not good cause connected with the employment. South Cent. Bell Tel. v. Dept. of Labor, 527 So.2d 1113 (La.App. 1st Cir. 1988), writ denied 532 So.2d 153 (La.1988); Louisiana Dept. of Corr. v. Adm'r, La. Off. of Emp. Sec., 457 So.2d 825 (La.App. 1st Cir.1984). Leaving a job to accept a better job with increased pay is a personal reason for terminating employment and, therefore, not a termination with good cause connected with the employment. Jenkins v. Whitfield, 505 So.2d 83 (La.App. 4th Cir.1987), writ denied 506 So.2d 114 (La.1987); Gunter v. Louisiana Dept. of Labor, 442 So.2d 804 (La.App. 4th Cir. 1983), writ denied 445 So.2d 438 (La.1984).
The cause of Grider's resignation had no connection with his employment. Grider chose to resign for purely personal reasons, to accept a better paying job. Grider's employer did nothing to induce or influence him to resign. Although his resignation may have been "reasonable," as he suggests, it nevertheless was without good cause in connection with his employment. For this reason, this assignment is without merit.

CONSTITUTIONAL ARGUMENT
Grider argues that the prior-claim requirement of R.S. 23:1601(1) creates an unequal distinction between disqualified claimants in violation of the Due Process Clause and the Equal Protection Clause of the U.S. and Louisiana Constitutions. R.S. 23:1601(1) provides in pertinent part:
An individual shall be disqualified for benefits:
(1) If the administrator finds that he has left his employment from a base period or subsequent employer without good cause connected with his employment. Such disqualification shall continue until such time as the claimant (a) can demonstrate that he has been paid wages for work subject to the Louisiana Employment Security Law or to the unemployment insurance law of any other state or the United States equivalent to at least ten times his weekly benefit amount subsequent to a claim for a compensable week for unemployment benefits under this Act and (b) has not left his last work under disqualifying circumstances. A compensable week is defined as a week for which benefits would otherwise be payable except for the disqualification imposed by this Paragraph or by the provisions of R.S. 23:1600(4); however, *754 if the claim for a compensable week is filed subsequent to six months from the date of any disqualifying separation under this Paragraph and the claimant has earned ten times his weekly benefit amount subsequent to the separation and has not left his last work under disqualifying circumstances, the disqualification imposed by this Paragraph shall no longer apply. * * *
Thus, an employee who voluntarily leaves his employment will be disqualified from receiving unemployment benefits but the statute also provides two methods for removing the disqualification. Under the first method, a disqualified claimant can requalify for benefits if he files a claim after leaving his first job, goes to a second job and earns wages equal to ten times his weekly benefit amount, and then leaves his second job under non-disqualifying circumstances. The second method covers a disqualified claimant who fails to file a claim after leaving the first job. Such a claimant also can requalify, but only by earning the requisite amount of wages, leaving his last job for non-disqualifying reasons, and waiting six months after the disqualifying separation.
Grider argues that R.S. 23:1601(1) unconstitutionally differentiates among those disqualified claimants who have earned enough wages to "requalify" for benefits. Only those who have fulfilled the prior-claim requirement are eligible to receive benefits immediately. Disqualified claimants who did not file a futile claim for benefits after leaving their job must wait at least six months from the separation from the first job. Grider admits that no fundamental right or suspect class is involved in this case, but urges it is unfair and frustrates the remedial purpose of the law to make one class of claimants wait six months before they can draw benefits.
The state and federal constitutional guarantees of equal protection mandate that state laws affect alike all persons and interests similarly situated. USCA-Const. Amend. 14; LSA-Const. Art. 1 § 3 (1974); Detraz v. Fontana, 416 So.2d 1291 (La. 1982).
When a state law does not classify individuals by race, religion, birth, age, sex, culture, physical condition, or political ideas, but does so on any other basis, Art. 1 § 3 of the Louisiana Constitution commands the court to decline the enforcement of the statute whenever a member of the disadvantaged class shows that the classification does not suitably further any appropriate state interest. Sibley v. Board of Sup'rs, 477 So.2d 1094 (La.1985). Under the U.S. Constitution, when no fundamental right or suspect classification is involved, the legislative classification must be rationally related to a legitimate state purpose. Clements v. Fashing, 457 U.S. 957, 102 S.Ct. 2836, 73 L.Ed.2d 508, reh. den., 458 U.S. 1133, 103 S.Ct. 20, 73 L.Ed.2d 1404 (1982); United States Dept. of Agr. v. Moreno, 413 U.S. 528, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973). The standard of review under the Louisiana and U.S. Constitution where no fundamental right or suspect classification is involved is essentially the same. Pierre v. Adm'r, La. Off. of Emp. Sec., supra.
The Louisiana Supreme Court was recently presented with a similar issue in Pierre v. Adm'r, supra. In Pierre, the plaintiffs were discharged from their first employment due to misconduct and thus disqualified from receiving benefits under R.S. 23:1601(2). After being discharged, they did not file claims for unemployment benefits at the time. Each subsequently worked for another employer but was later discharged under non-disqualifying circumstances. Plaintiffs then filed claims for unemployment benefits, and the claims were denied.
Because the plaintiffs were discharged for misconduct, their claims were controlled by R.S. 23:1601(2), which provides:
An individual shall be disqualified for benefits:
(2) If the administrator finds that he has been discharged by a base period or subsequent employer for misconduct connected with his employment. Such disqualification shall continue until such time as the claimant (a) can demonstrate *755 that he has been paid wages for work subject to the Louisiana Employment Security Law or to the unemployment insurance laws of any other state or of the United States equivalent to at least ten times his weekly benefit amount subsequent to a claim for a compensable week for unemployment benefits under this Act and (b) has not left his last work under disqualifying circumstances. A compensable week is defined as a week for which benefits would otherwise be payable except for the disqualification imposed by this Paragraph or by the provisions of R.S. 23:1600(4).
Each plaintiff earned ten times his weekly benefit amount, but their claims were denied because the wages were not earned "subsequent to a claim for a compensable week for unemployment benefits." Plaintiffs challenged the constitutionality of R.S. 23:1601(2) under the Equal Protection Clause, contending it differentiated among disqualified claimants who had earned enough wages to requalify for benefits. The court held that the prior-claim requirement under R.S. 23:1601(2) created a classification scheme under which persons similarly situated received unequal treatment. It held that the statute's differentiation between disqualified claimants who filed and did not file a prior claim did not further any appropriate state interest. It therefore concluded that R.S. 23:1601(2) was unconstitutional under the Equal Protection Clauses of both the Louisiana and U.S. Constitutions.
The court did not address the similar prior-claim requirement of R.S. 23:1601(1). It noted that R.S. 23:1601(1) and R.S. 23:1601(2) both contained the prior-claim requirement, but expressly reserved deciding the validity of the former because the issue was not before it.
The constitutionality of R.S. 23:1601(1) under the Equal Protection Clause was addressed in Jenkins v. Whitfield, supra. The plaintiff advanced a similar argument as here, that the prior-claim requirement violated his constitutional rights under the Equal Protection Clause. However, in our opinion, the court did not adequately address the legislative purpose behind the distinction between disqualified claimants who did and did not file prior claims after leaving their first job. As pointed out in Pierre, the purpose behind the prior-claim requirement was to alleviate the surcharge or tax burden on the first employer and that purpose was effectuated by an amendment to LSA-R.S. 23:1553(D). For this reason, Pierre casts doubt on the constitutional holding of Jenkins, and we find Jenkins unpersuasive in that regard.
Gunter v. Louisiana Dept. of Labor, supra, cited in brief by the Agency, is not apposite. In Gunter, the plaintiff argued that the prior-claim requirement of R.S. 23:1601(1) created an absurd result inconsistent with the intent of the statute. However, Gunter did not challenge the constitutionality of R.S. 23:1601(1). The court in denying his claim held that Gunter's argument addressed itself to legislative action rather than to the courts. Therefore, it has no application to this case.
In light of Pierre, we have no trouble concluding that the prior-claim requirement creates two classes of disqualified claimants who seek to requalify for benefits. The class of claimants who file prior claims requalify immediately upon meeting the other criteria, while those who do not file a prior claim for benefits suffer a six month waiting period. The statute therefore creates a classification scheme where one similarly situated class receives unequal treatment.
The Agency initially contended that the state purpose of the six month waiting period is to discourage "job-hopping." While we question the validity of this contention, we note that the Agency has advanced no legislative purpose for the prior-claim requirement. In fact, we do not find that the prior-claim requirement suitably furthers any appropriate state interest or that it is rationally related to a legitimate state purpose. This finding is consistent with the Supreme Court's decision in Pierre v. Adm'r that the prior-claim requirement of R.S. 23:1601(2) was unconstitutional. The difference between R.S. 23:1601(1) and R.S. 23:1601(2), the six *756 month waiting period, is insufficient to protect § 1601(1) from constitutional attack. The inclusion of the six month waiting period in § 1601(1) only purports to lessen the harshness of the unequal treatment. However, a six month delay in benefits to a deserving worker is almost as financially devastating as a total denial. The prior-claim requirement of § 1601(1) is unconstitutional under the Equal Protection Clause of both the Louisiana and U.S. Constitutions.
The unconstitutional provision "subsequent to a claim for compensable week for unemployment benefits under this Act" was added to R.S. 23:1601(1) in 1981. LSA-Acts 1981, No. 131. An unconstitutional amending statute or ordinance is in reality no law, and in legal contemplation is as inoperative as if it had never been passed. See Pierre v. Adm'r, supra; City of New Orleans v. Levy, 223 La. 14, 64 So.2d 798 (1953). Therefore, R.S. 23:1601(1) must be applied in its pre-1981 form which read:
An individual shall be disqualified for benefits:
(1) If the administrator finds that he has left his employment without good cause connected with his employment. Such disqualification shall continue until such time as the claimant (a) can demonstrate that he has been paid wages for work subject to the Louisiana Employment Security Law or to the unemployment insurance law of any other state or the United States, equivalent to at least ten times his weekly benefit amount following the week in which the disqualifying act occurred and (b) has not left his last work under disqualifying circumstances.
Though counsel for the Agency conceded this conclusion at oral arguments, he urged that the record is insufficient to show that Grider earned "ten times his weekly benefit amount following the week in which the disqualifying act occurred." For this reason, he requests a remand for this determination. We agree. Our review of the record fails to reveal Grider's weekly benefit amount, as calculated under LSA-R.S. 23:1592, as well as competent proof of his actual wages at the second job. Accordingly, this case is remanded to the district court for the purpose of calculating Grider's weekly benefit amount and determining if he earned wages equivalent to at least ten times his weekly benefit amount following the week in which the disqualifying act occurred.

CONCLUSION
In sum, the 1981 amendment to R.S. 23:1601(1), which added the prior-claim requirement, is unconstitutional under the Equal Protection Clause of the U.S. and Louisiana Constitutions. R.S. 23:1601(1) is to be applied in its pre-1981 form. The judgment of the district court affirming the denial of benefits is reversed and the case is remanded to the district court with instructions to determine (1) Grider's weekly benefit amount and (2) wages he earned at the second job. If the wages for the second job exceed ten times the weekly benefit amount, the court is to order payment of benefits in accordance with law; if not, the court is to reenter the order of disqualification.
Because we reverse and remand on this basis, we need not specifically address Grider's due process argument. Costs are not assessed. LSA-R.S. 13:4521.
REVERSED AND REMANDED.